IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIO-ETHICAL REFORM, INC.<br>P.O. Box 219<br>Lake Forest, California 92609<br><br>GREGG CUNNINGHAM<br>P.O. Box 219<br>Lake Forest, California 92609<br><br>REVEREND CLENARD H. CHILDRESS, JR.<br>P.O. Box 157<br>Montclair, New Jersey 07042<br><br>JACQUELINE HAWKINS<br>P.O. Box 20115<br>Knoxville, Tennessee 37940<br><br>       Plaintiffs,<br><br>  -v.-<br><br>NATIONAL MUSEUM OF AFRICAN AMERICAN HISTORY AND CULTURE ("NMAAHC")<br>1400 Constitution Avenue, NW<br>Washington, D.C. 20004<br><br>LONNIE G. BUNCH III, in his official capacity as Director, NMAAHC<br>1400 Constitution Avenue, NW<br>Washington, D.C. 20004<br><br>OFFICE OF PROTECTION SERVICES ("OPS")<br>600 Maryland Avenue, SW<br>Washington, D.C. 20024<br><br>JEANNE O'TOOLE, in her official capacity as Director, OPS<br>600 Maryland Avenue, SW<br>Washington, D.C. 20024<br><br>JOHN DOE, a fictitious name, individually and in his official capacity as a police/security officer, OPS<br>600 Maryland Avenue, SW<br>Washington, D.C. 20024<br><br>       Defendants. | **COMPLAINT**<br><br>[Civil Rights Action under<br>First and Fifth Amendments and<br>42 U.S.C. § 2000bb-1] |

Plaintiffs Center for Bio-Ethical Reform, Inc. ("CBR"), Gregg Cunningham, Reverend Clenard H. Childress, Jr., and Jacqueline Hawkins (collectively referred to as "Plaintiffs"), by and through their undersigned counsel, bring this Complaint against Defendants National Museum of African American History and Culture ("NMAAHC"), Lonnie G. Bunch III, in his official capacity as Director of NMAAHC, the Office of Protection Services ("OPS"), Jeanne O'Toole, in her official capacity as Director of OPS, and John Doe, a fictitious name, individually and in his official capacity as a police/security officer of OPS (collectively referred to as "Defendants") and their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.     This case seeks to protect and vindicate fundamental constitutional and statutory rights. It is a civil rights action brought under the First and Fifth Amendments to the United States Constitution and the Religious Freedom Restoration Act ("RFRA"), challenging Defendants' restriction on Plaintiffs' rights to freedom of speech and religious exercise.

2.     Plaintiffs seek a declaration that Defendants violated their clearly established constitutional and statutory rights as set forth in this Complaint; a declaration that Defendants' restriction on Plaintiffs' speech and religious exercise violates the U.S. Constitution and RFRA; a declaration that the public sidewalks abutting the streets surrounding NMAAHC are traditional public forums for free speech activity; a preliminary and permanent injunction enjoining the enforcement of Defendants' restriction; and an award of nominal damages for the past loss of Plaintiffs' constitutional and statutory rights as against Defendant Doe in his individual capacity. Plaintiffs also seek an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

3. This action in which the United States is a defendant arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1346.

4. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by 42 U.S.C. § 2000bb-1, and by the general legal and equitable powers of this Court.

5. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this district and a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district.

6. This Court has authority to award Plaintiffs their reasonable costs and attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 2000bb-1, 42 U.S.C. § 1988, and the general legal and equitable powers of this Court.

## PLAINTIFFS

7. Plaintiff Center for Bio-Ethical Reform, Inc. ("CBR") is a pro-life, nonprofit corporation that is recognized by the Internal Revenue Service as a 501(c)(3) organization. CBR is incorporated under the laws of California.

8. Plaintiff Gregg Cunningham is an adult citizen of the United States and the Executive Director of CBR. Plaintiff Cunningham is a Christian, and he exercises his rights to freedom of speech and the free exercise of religion through the activities and projects of CBR, including the NMAAHC project set forth in this Complaint.

9. Plaintiff Reverend Clenard Childress, Jr., is an adult citizen of the United States and a CBR board member. Plaintiff Childress is African American, and he is the pastor of a

black church in the Newark, New Jersey area. Plaintiff Childress, along with Plaintiff Hawkins, directs the NMAAHC project. Plaintiff Childress is a Christian, and he exercises his rights to freedom of speech and the free exercise of religion through the NMAAHC project.

10. Plaintiff Jacqueline Hawkins is an adult citizen of the United States and the Director of Minority Outreach for CBR. Plaintiff Hawkins is African American, and she, along with Plaintiff Childress, directs the NMAAHC project. Plaintiff Hawkins is a Christian, and she exercises her rights to freedom of speech and the free exercise of religion through the NMAAHC project.

## DEFENDANTS

11. Defendant NMAAHC is a government agency that was established by an Act of Congress in 2013. NMAAHC receives public funding to support its operations. As a federal government entity, NMAAHC and its officers, agents, and employees are mandated to comply with the First and Fifth Amendments to the U.S. Constitution and RFRA.

12. NMAAHC is part of the Smithsonian Institution. The Smithsonian's federal appropriation for 2016 was $840 million. The Institution is about 60 percent federally funded.

13. Defendant Lonnie G. Bunch III is the founding Director of NMAAHC. As Director, Defendant Bunch is responsible for enforcing the acts, policies, practices, and/or customs of NMAAHC, including the restriction on Plaintiffs' constitutional and statutory rights as set forth in this Complaint. Defendant Bunch is sued in his official capacity only.

14. Defendant Office of Protection Services ("OPS") is a government agency responsible for providing security and law enforcement for the Smithsonian Institution and its affiliated museums, including NMAAHC.

15. Defendant Jeanne O'Toole is the Director of OPS. Pursuant to federal law, the Secretary of the Smithsonian Institution has delegated to the Director of OPS the authority to designate employees as special police to perform necessary law enforcement duties in connection with the policing of the buildings and grounds of the Smithsonian Institution and its affiliated museums, including NMAAHC.

16. As Director of OPS, Defendant O'Toole is responsible for enforcing the acts, policies, practices, and/or customs of NMAAHC and OPS, including the restriction on Plaintiffs' constitutional and statutory rights as set forth in this Complaint. Defendant O'Toole is sued in her official capacity only.

17. Defendant John Doe (a fictitious name) is an OPS police/security officer with the authority to enforce the acts, policies, practices, and/or customs of NMAAHC and OPS. At all times relevant herein, Defendant Doe was enforcing NMAAHC and OPS acts, policies, practices, and/or customs.

## STATEMENT OF FACTS

18. CBR is a social reform organization whose main purpose is to promote prenatal justice and the right to life for the unborn, the disabled, the infirm, the aged, and all vulnerable peoples through education and the development of innovative educational programs.

19. One such educational program is the NMAAHC project, which includes the use of hand-held, photo-mural exhibits that demonstrate the devastation of abortion's consequences on the African American community. This project also includes the distribution of literature.

20. NMAAHC opened September 24, 2016, on the National Capitol Mall in Washington, D.C.

21. NMAAHC is located at 1400 Constitution Avenue, NW, Washington, D.C., between Madison Drive and Constitution Avenue and between 14th and 15th Streets.

22. Constitution Avenue, Madison Drive, 14th Street, and 15th Street are public streets, and they and their adjacent sidewalks constitute traditional public forums under the First Amendment.

23. NMAAHC's website declares that "NMAAHC is a public institution open to all, where anyone is welcome to participate, collaborate, and learn more about African American history and culture."

24. NMAAHC claims to be "the only national museum devoted exclusively to the documentation of African American life, history, and culture."

25. Pursuant to Plaintiffs' sincerely held religious beliefs, abortion is an intrinsic evil and a grave sin because it results in the death of an innocent human life.

26. Pursuant to Plaintiffs' sincerely held religious beliefs, they are required to publicly proclaim the evil of abortion in order to convert the hearts and minds of those who support or condone abortion, including those who condone abortion by remaining neutral to this grave evil.

27. The right to free exercise of religion includes the right to engage in conduct that is motivated by religious beliefs.

28. Plaintiffs' religious beliefs motivate their expressive conduct set forth in this Complaint. Specifically, Plaintiffs sincerely held religious beliefs compel them to engage in the NMAAHC project as set forth in this Complaint.

29. The NMAAHC project is particularly important because the African American community has been harmed by abortion more than any other community in this country.

30. According to the Centers for Disease Control, although African American women account for only 11% of the female population, they are the victims of 36% of all abortions. By 2009, 16 million black children had been aborted. Had they lived, the black population would be 50% larger than what it was in 2009—49 million instead of 33 million. By 2014, 18 million African American babies had been aborted. This is black genocide.

31. NMAAHC hides from those who visit the museum the fact that abortion is disproportionately harming the African American community. And in fact, NMAAHC endorses and promotes those individuals and organizations that promote abortion.

32. For example, NMAAHC promotes the movement called Black Lives Matter ("BLM"). BLM is viciously pro-abortion. In a news article published in July 2016, the BLM perspective was explained as follows: "Anti-choice activists attempt to hijack Black Lives Matter to shame women for abortion," asserting that "[e]quating the loss of *actual people* to gun violence with abortion serves to make [a] mockery of the deaths of *real people*, as if they had *no greater value than that of an embryo*."

33. As another example, Justice Thurgood Marshall, the first African American to serve on the U.S. Supreme Court, was inhumanely pro-abortion, demanding even public funding for the abortions which savage the African American community with black genocide. His tenure is nonetheless celebrated by NMAAHC.

34. On the other hand, Just Clarence Thomas, an African American currently serving on the U.S. Supreme Court, is humanely pro-life. His tenure, however, is defiantly denied the slightest mention in any exhibit appearing in this hyper-politicized institution known as NMAAHC.

-
-

35. Defendant Bunch politicized this museum from the very beginning when he was interviewed in a *Washington Post* news article which described the museum's inaugural event as a "coda to the Obama administration." Defendant Bunch declared that he wants the museum to be the latest iteration of the national conversation about race, when in reality he wants a partisan monologue. Defendant Bunch says he wants the museum to tackle the difficult, painful issues, but when Plaintiffs attempt to create a "conversation" with those who visit NMAAHC and inject the issue of the high abortion rate in the African American community, Plaintiffs are threatened with arrest. Defendant Bunch told the *Washington Post* that "[w]e felt it was really important to take on things that might be deemed controversial or difficult," stating that NMAAHC will have a core of volunteers who have been trained to help visitors who "might be emotional or upset by these issues" and to encourage visitors to take time in the "reflective areas" around the museum for facilitated conversations. Yet, Defendant Bunch wants to exclude from this conversation of controversial or difficult issues the drastic effect abortion is having on the African American community.

36. Plaintiffs contend that if the curators won't tell the story about the impact of abortion on the African American community inside the museum, they will tell it outside.

37. Plaintiffs' NMAAHC project poses, *inter alia*, the following questions: Does the greater threat posed to black children emanate from white police officers or Planned Parenthood? Do born "Black Lives Matter" more than unborn black lives? NMAAHC trivializes or ignores each of these important questions, and Plaintiffs seek to remedy this deficiency through the exercise of their constitutional and statutory rights.

38. Plaintiffs' display-content should be exhibited inside the publicly funded museum, but at a minimum, African American citizens such as Plaintiffs Childress and Hawkins

shouldn't be threatened by government officials with arrest or force for displaying this content on the public sidewalks in front of this museum.

39. The National Park Service estimates that approximately 29 million tourists visited the Capitol Mall in 2014. That number was up nearly 10% from the previous year and is likely to continue growing. A high percentage of the visitors to NMAAHC are expected to be African American students from public schools, many of whom will be bussed into the nation's capital on field trips financed by large amounts of public funding. What these students will experience at this museum will profoundly influence their sense of justice and injustice throughout their lives.

40. Plaintiffs desire to reach this target audience in order to shape these students' understanding of justice and to educate them regarding the tremendous harm abortion is doing to the African American community. NMAAHC wants to prevent Plaintiffs from doing so. NMAAHC has been hijacked by activists who wield a divisive political agenda which advocates in favor of abortion, thereby continuing this harm to the black community.

41. Plaintiffs' NMAAHC project includes the display of hand-held signs on the public sidewalks immediately adjacent to the entrances of NMAAHC. The display of these signs (5' x 5') is safe and non-obstructive. Examples of these signs include the following:















42. On February 1, 2017, Plaintiffs Childress and Hawkins initiated the NMAAHC project by peacefully standing outside of the NMAAHC entrance on the public sidewalk adjacent to Madison Drive with one of the project signs. Plaintiff Cunningham was present as well. A true and correct photograph of Plaintiffs' peaceful and non-obstructive expressive activity appears below:



43. At no time did any Plaintiff engage in disruptive behavior or obstruct anyone from using the public sidewalk, and no one was restricted in any way from entering or exiting NMAAHC. Plaintiffs stood silent, allowing the images on their sign to do the talking for them.

44. Shortly after they arrived, Plaintiffs were confronted by an African American official from NMAAHC who was dressed in a suit. This NMAAHC official told Plaintiffs that

they could not stand outside the museum with their sign. Plaintiff Childress responded that this is a public sidewalk.

45. The NMAAHC official summoned Defendant Doe, who is a uniformed police/security officer with OPS. Defendant Doe was armed with a firearm. Two additional, armed, uniformed OPS police/security officers arrived. One was a female officer. A female officer was likely summoned due to the fact that Plaintiff Hawkins, a woman, was present.

46. Defendant Doe proceeded to tell Plaintiffs that if they did not move, then he and his fellow officers would move them. Meaning, if Plaintiffs did not cease their expressive activity on this public sidewalk, Defendant Doe and the other armed officers would use force to move them. Defendant Doe confirmed that if Plaintiffs did not move, they would be arrested.

47. Rather than be arrested or subjected to physical force, Plaintiffs ceased their expressive activity and moved per Defendant Doe's order.

48. By ordering Plaintiffs to cease their expressive activity, Defendant Doe was enforcing the policy, practice, and/or custom of NMAAHC and OPS to prohibit expressive activity on this public sidewalk adjacent to Madison Drive outside of the NMAAHC entrance. In particular, Defendant Doe was enforcing a restriction on speech that Defendants oppose.

49. Pursuant to the policy, practice, and/or custom of NMAAHC and OPS, Defendant Doe ordered Plaintiffs to move to the public sidewalk on the other side of Madison Drive.

50. By ordering Plaintiffs to move under threat of arrest or physical force, Defendants forced Plaintiffs to move to a location where they could not reach their target audience and where their message would be silenced. Indeed, the steady stream of busses that ran on Madison Drive between Plaintiffs and their target audience ensured that Plaintiffs' message would be blocked, as Defendants intended. Moreover, this location prevents Plaintiffs from distributing

literature and from engaging in the "conversation" with museum visitors that Defendant Bunch deemed so critical.

51.    True and accurate photographs related to the location where Plaintiffs were ordered to move appear below:







52.    Plaintiffs want to return to NMAAHC to display their signs on the public sidewalks adjacent to the museum, specifically including the public sidewalk adjacent to

Madison Drive. They also want to engage in their free speech activity on all of the public sidewalks surrounding NMAAHC in order to reach their target audience of museum visitors. However, Plaintiffs reasonably fear that if they do, Defendants will again threaten them with arrest and physical force, thereby preventing Plaintiffs from engaging in their expressive activity and causing irreparable harm.

## FIRST CLAIM FOR RELIEF
### (Freedom of Speech—First Amendment)

53. Plaintiffs hereby incorporate by reference all stated paragraphs as though fully set forth herein.

54. By reason of the aforementioned restriction on Plaintiffs' expressive activity, Defendants have deprived Plaintiffs of their right to engage in protected speech in a traditional public forum in violation of the Free Speech Clause of the First Amendment.

55. Defendants' restriction on Plaintiffs' speech is content- and viewpoint-based in violation of the Free Speech Clause of the First Amendment. Defendants not only want to control the content and viewpoint of the messages expressed to visitors inside the museum, they want to control the content and viewpoint of the messages expressed to potential visitors outside of the museum, on penalty of arrest.

56. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief.

## SECOND CLAIM FOR RELIEF
### (Equal Protection—Fifth Amendment)

57. Plaintiffs hereby incorporate by reference all stated paragraphs as though fully set forth herein.

58. By reason of the aforementioned restriction on Plaintiffs' expressive activity, Defendants have deprived Plaintiffs of the equal protection of the law guaranteed under the Fifth Amendment to the U.S. Constitution in that Defendants are preventing Plaintiffs from expressing a message in a traditional public forum based on its content and viewpoint, thereby denying the use of a forum to those whose views Defendants find unacceptable.

59. As a direct and proximate result of Defendants' violation of the equal protection guarantee of the Fifth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief.

## THIRD CLAIM FOR RELIEF
### (Religious Freedom Restoration Act)

60. Plaintiffs hereby incorporate by reference all stated paragraphs as though fully set forth herein.

61. Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint violates the Religious Freedom Restoration Act (42 U.S.C. § 2000bb, *et seq.*).

62. Plaintiffs' sincerely held religious beliefs require them to publicly express their opposition to abortion. Plaintiffs' compliance with these beliefs is a religious exercise.

63. Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint substantially burdens Plaintiffs' sincerely held religious beliefs and religious exercise.

64. Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint does not further any compelling governmental interest.

65. Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint is not the least restrictive means to accomplish any permissible governmental interest.

66. Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint violates the Religious Freedom Restoration Act, and it has caused, and will continue to cause, Plaintiffs to suffer undue hardship and irreparable injury.

67. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional and statutory rights and are therefore entitled to declaratory and injunctive relief against all Defendants.

68. Plaintiffs are entitled to nominal damages against Defendant Doe, in his individual capacity, for the violation of their rights protected by the Religious Freedom Restoration Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A) to declare that Defendants' restriction on Plaintiffs' expressive activity as set forth in this Complaint violates the First and Fifth Amendments to the U.S. Constitution;

B) to declare that the public sidewalks adjacent to the public streets surrounding NMAAHC are traditional public forums for Plaintiffs' free speech activity;

C) to preliminarily and permanently enjoin Defendants' restriction on Plaintiffs' expressive activity as set forth in this Complaint;

D) to award Plaintiffs nominal damages against Defendant Doe in his individual capacity for the past loss of their rights protected by the Religious Freedom Restoration Act as set forth in this Complaint;

E) to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

F) to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

*/s/ Robert J. Muise*
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
rmuise@americanfreedomlawcenter.org

*/s/ David Yerushalmi*
David Yerushalmi, Esq. (DC Bar No. 978179)
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20006
david.yerushalmi@verizon.net
Tel: (646) 262-0500
Fax: (801) 760-3901